IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEAL GENIUS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | No. 21 C 2046 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| 02 COOL, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**A.**

Discovery in this case began in August 2021 [Dkt. #30] and was originally set to close on February 22, 2022. [Dkt. #25]. Just a few weeks after counsel said that they "do not propose deviating from the schedule Ordered by this Court" [Dkt. #30, Par. D], this case took a very different course. As of November 5, 2021, the parties could not even agree whether plaintiff's initial round of production was to have included emails – despite their ubiquity and importance in modern business. [Dkt. #32]. Two weeks later, the parties sought – and received – a lengthy four-month extension to the discovery schedule they did "not propose deviating from." [Dkt. #36-1, 37]. The new deadline was June 23, 2022.

Three months later, at the first status hearing on February 14, 2022, six months into discovery, the parties had made no progress on email discovery [Dkt.#39], even though it cannot be denied that in the world in which we live emails of a party's employees may be the most compelling form of evidence. The value of emails and texts messages can be particularly significant in litigation due to the fact that the ease of sending or replying to such messages can cause people to say things

they might not otherwise say in traditional correspondence. Indeed, emails are often replete with unrehearsed, spontaneous statements that surpass in simplicity and frankness and ease of understanding other far more complicated bits of evidence. *See Shlahticman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 801 (7th Cir. 2010); Michael B. Bittner, *Electronic Discovery: Understanding the Framework of Florida E-Discovery Law*, Trial Advoc. Q., Spring 2016, at 22; Lawrence D. Rosenberg, *Lawyers' Poker: Using the Lessons of Poker to Win Litigation*, 54 The Advocate (Texas) 10, 12 (2011). Simply stated, "[e]lectronic communications have the potential to ... provide the proverbial 'smoking gun.'" William A. Herbert, *The Electronic Workplace: To Live Outside the Law You Must Be Honest*, 12 Emp. Rts. & Emp. Pol'y J. 49, 51-52 (2008). Of course, "automatic retention of electronic communications eliminates even the possibility of plausible deniability." *Id.* at 53.

Rather than take the opportunity of settling their email dispute at or before the hearing, the parties chose to file briefs on the matter. That the dispute was far better suited to a hearing is illuminated by the parties' filings. Plaintiff's counsel spent two-thirds of its brief complaining about defendant's counsel's performance in the parties' Rule 37.2 conference and the pointless exchanges of angry emails, which, unfortunately in all too many cases, have come to typify the otiose exchanges between adversaries. [Dkt. #41, at 1-10]. Defendant's counsel spent half its brief complaining about plaintiff's counsel's performance at the same Rule 37.2 conferences and the same exchanges of angry emails. [Dkt. #42, at 3-10]. The attorneys even disagreed over what happened between them at certain points in their months-long squabble. It is the attorney version of the children's taunt, "I know you are but what am I?" Unfortunately, it is all too common – and unnecessary. *See* Robert Gettleman, *We Can Do Better,* Litigation 3 (SUMMER 1999); Stuart M. Speiser*, Sarbanes-Oxley and the Myth of the Lawyer-Statesman*, Litigation, 5 (Fall 2005). And

seems to be even more common in discovery disputes like this one. As such, a tedious summary of counsels' competing versions of what occurred is unnecessary – and unhelpful.[1]

**B.**

This case is about little, plastic, battery-operated fans that dangle around one's neck on a lanyard. The parties each make them. The lanyard on the defendant's little plastic fan is attached to one corner of the fan so the fan hangs on an angle. That's part of the defendant's patent. The lanyard on the plaintiff's little plastic fan is attached to both sides of the fan so the fan hangs straight. [Dkt. #17, Pars. 16-24; Dkt. #23, ¶. 21]. The defendant thinks the plaintiff's plastic necklace fan is infringing its patent; the plaintiff disagrees. Here, as in all cases, it is imperative to recall Fed.R.Civ.P. 26(b)(1), which limits discovery not only in terms of relevance, but in terms of what is "proportional to the needs of the case, considering the importance of the issues at stake in

---

[1] Unfortunately, what has occurred here is not new. Learned Hand would lament in an address to the Bar Association of the City of New York in 1921, about the "atmosphere of contention over trifles, the unwillingness to concede what ought to be conceded, and to proceed to the things which matter. Courts have fallen out of repute; many of you avoid them whenever you can, and rightly. About trials hang a suspicion of trickery and a sense of a result depending upon cajolery or worse. I wish I could say that it was all unmerited. After now some dozen years of experience I must say that as a litigant I should dread a lawsuit beyond almost anything else short of sickness and death." Lectures on Legal Topics, Learned Hand, The Deficiencies Of Trials to Reach the Heart of the Matter, 105 (The MacMillan Co.1926).

While protracted discovery may be the "bane of modern litigation," *Rossetto v. Pabst Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir.2000) (Posner, J.); *see also* Frank Easterbrook, *Discovery as Abuse,* 69 B.U.L.Rev. 635 (1989), lawyers have an obligation to participate fully, fairly, and cooperatively in that often needlessly contentious endeavor. *See* Rule 37, Federal Rules of Civil Procedure; *Harrington v. City of Chicago,* 433 F.3d 542 (7th Cir.2006); *Zenith Electronics Corp. v. WH–TV Broadcasting Corp.,* 395 F.3d 416 (7th Cir.2005); *Johnson v. J.B. Hunt Transport, Inc.,* 280 F.3d 1125, 1132 (7th Cir.2002); *Newman v. Metropolitan Pier & Exposition Authority,* 962 F.2d 589 (7th Cir.1992); *Airtex Corp. v. Shelley Radiant Ceiling Co.,* 536 F.2d 145, 155 (7th Cir.1976); *Stingley v. City of Chicago,* 2009 WL 3681984, 2 (N.D.Ill.2009) (collecting cases). *See also Littlejohn v. Bic Corp.,* 851 F.2d 673, 684 (3rd Cir.1988) ("Scrupulous compliance with court discovery orders is particularly important because our system of discovery relies on the cooperation and integrity of attorneys operating within the guidelines provided by the Federal Rules of Civil Procedure and the provisions of any protective order."); *Sentis Group, Inc., Coral Group, Inc. v. Shell Oil Co,* 559 F.3d 888, 891 (8th Cir.2009); *Moses v. Sterling Commerce (America), Inc.,* 122 Fed.Appx. 177, 182 (6th Cir.2005).

the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Proportionality is a vital limitation on pretrial discovery, which courts have rightly called "a runaway train," *Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130, U. A.*, 657 F.2d 890, 901 (7th Cir. 1981) – "a monster on the loose," *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986) – and "the bane of modern litigation." *Rossetto v. Pabst Brewing Co., Inc.*, 217 F.3d 539, 542 (7th Cir. 2000). Proportionality, like other concepts, it is not self-defining; it requires a common sense and experiential assessment. *See, e.g., BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 175 (N.D. Ill. 2018). Indeed, Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary noted that the addition of "proportionality" to Rule 26(b) "crystalize[d] the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Id*. (emphasis added).

It is well to recall that the concept of proportionality did not make its first appearance in the Federal Rules of Civil Procedure with the 2015 Amendments. The requirement of proportionality has long been part of discovery in the federal courts. It has long been a part of the Federal Rules of Civil Procedure, at one time appearing in Rule 26(b)(2)(C)(iii). *Henry v. Morgan's Hotel Grp., Inc.*, 2016 WL 303114 (S.D.N.Y. 2016); *Certain Underwriters at Lloyds v. Nat'l RR Passenger Corp*., 318 F.R.D. 9, 14 (E.D.N.Y. 2016). Renumbering the proportionality requirement and placing it in Rule 26(b)(1) was designed to put a greater emphasis on the need to achieve proportionality than was thought to previously have existed given its placement in the structure of Rule 26. *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016). The renumbering of the proportionality

requirement was thought to restore and emphasize the role proportionality was to play in discovery. *Boehringer Ingelheim Pharma GMBH & Co. KG v. Teva Pharm. USA, Inc*., 2016 WL 11220848, at *3 (D.N.J. 2016). *See* the lengthy and informative discussion in Linda Simard, *Seeking Proportional Discovery: The Beginning of the End of Procedural Uniformity in Civil Rules*, 71 Vanderbilt L.Rev., 1919 (2018); *Velez v. City of Chicago*, 2021 WL 309028, at *1 (N.D. Ill. 2021).

Based on the parties' filings, the amount of emails in play here appears to be well over 50,000 – they disagree over that, of course, as they disagree over just about everything. But, it's not just a matter of producing 50 or 60,000 emails, or 10,000. It is also a matter of sifting through those emails for relevance and privilege and, given what the attorneys have failed to accomplish this far, involving the court in disputes over those activities and claims.[2] That's clearly out of proportion

---

[2] The parties should be aware that, when the numbers of documents to be reviewed by a court in discovery disputes move into the hundreds, courts in this Circuit find it appropriate and far more efficient to engage a special master under Fed.R.Civ.P. 53(a)(1)(C). *See, e.g., Am. Nat. Bank & Tr. Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867, 880 (7th Cir. 2005)(400 documents); *Schmucker v. Johnson Controls, Inc*., 2017 WL 6043328, at *1 (N.D. Ind. 2017)(358 documents); *Finnegan v. Myers*, 2014 WL 12789809, at *8 (N.D. Ind. 2014)(600 documents); *In re FedEx Ground Package Sys., Inc*., 2007 WL 79312, at *8 (N.D. Ind. 2007); *Avery Dennison Corp. v. UCB Films PLC*, 1998 WL 703647, at *1 (N.D. Ill. 1998)(800 documents). The practice is far more common in other circuits and is employed even with relatively few documents at issue. *IQVIA, Inc. v. Veeva Sys., Inc*., 2020 WL 2039836, at *2 (D.N.J. 2020)(34 documents); *In re Lincoln Nat'l COI Litig*., 2020 WL 1157172, at *1 (E.D. Pa. 2020)(21 documents); *Orexo AB v. Actavis Elizabeth LLC*, 2018 WL 5891690, at *1 (D. Del. 2018)(29 documents); *Nat.-Immunogenics Corp. v. Newport Trial Grp*., 2018 WL 6137597, at *2 (C.D. Cal. 2018)(364 documents); *Engage Healthcare Commc'ns, LLC. v. Intellisphere, LLC*., 2017 WL 10259774, at *1 (D.N.J. 2017)(58 documents).

In addition, given the issues at stake in this case, it is likely more fair to have the parties bear the costs of their discovery dispute, rather than as a tax-payer subsidized matter. *See, e.g., Chicago Observer, Inc. v. City of Chicago*, 929 F.2d 325, 329 (7th Cir. 1991) ("Litigation is costly not only for the litigants but also for parties in other cases waiting in the queue for judicial attention."); *Chapman v. First Index, Inc*., 796 F.3d 783, 787 (7th Cir. 2015)(the public should not be made to subsidize needless disputes). Review of thousands or even hundreds of documents would monopolize the court's attentions and be patently unfair to the other litigants waiting in the queue, most of whom have honed their discovery disputes through the meet-and-confer process to far more manageable levels long before discovery closed. *See* Fed.R.Civ.P. 53(a)(3).

Accordingly, should this discovery dispute advance to the appointment of a special master, that would surely be at the parties' expense. Indeed, often the losing party is made to foot the bill, *see, e.g., In re FedEx*
(continued...)

5

with what is at stake here, whether it's $90,000 worth of necklace fans or a little more. Indeed, defendant's motion ignores Fed.R.Civ.P. 26(b)(1)'s proportionality limitation completely. [Dkt. #41, at 12-13].

In any event, after several months, counsel ought to have been able to come to the court with a dispute that had been honed to a disagreement over a far more manageable number of emails. After all, there is nothing unique or special about the emails involved here. But, it is not until its reply brief that defendant brings up possible solutions to significantly reduce the number of documents.[3] That, of course, is obviously too late. *See Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 360 (7th Cir. 1987)("Reply briefs are for replying."). When parties fail to compromise over discovery in good faith as directed by Local Rule 37.2 (as the parties here have failed to do), *see, e.g., Gunn v. Stevens Security & Training Servs., Inc*., 2018 WL 1737518, at *3 (N.D. Ill. 2018)("A party that steadfastly maintains a position without support is not engaging in a good faith discussion."); *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc*., 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018)("An ultimatum on one side, met with steadfast defiance on the other, is not a good faith discussion."); *Infowhyse GmbH v. Fleetwood Grp*., 2016 WL 4063168, at *1 (N.D. Ill. 2016)("… adamantly clinging to the positions with which they began" amounts to a failure

---

[2](...continued)
*Ground Package Sys., Inc.*, 2007 WL 79312, at *6 (N.D. Ind. 2007) – in accord with Fed.R.Civ.P. 53(b)(1) and (2). We point this out as neither party seems to have taken this eventuality into account in their submissions and to underscore that the best outcome here would be one arrived at through good faith negotiation.

[3] The only case defendant cites – and then not until its reply brief – as support for production of such a large number of emails is a patent case over a system for blending butane with gasoline resulting in almost $3 million in damages and prejudgment interest. [Dkt # 45, at 5, citing *Sunoco Partners Mktg. & Term. L.P. v. U.S. Venture, Inc. et al.*, No. 1:15-cv-8178 (N.D. Ill. July 26, 2016)]. Obviously, that's a far cry from necklace fans. And, notably, Judge Pallmeyer ruled on the motion in a minute order after a motion hearing, which is a far more efficient method of resolution in disputes like this, once the parties have made significant progress on their own. [No. 1:15-cv-8178, Dkt. #88,].

"to comply, in good faith, with the requirements of Local Rule 37.2."), the court has vast discretion to resolve their disputes. *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016); *James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013). That discretion means there is no "right" or "wrong" answer, and that is why it behooves parties to work out their difficulties. *See Ledo's Pizza Sys., Inc. v. Ledo's, Inc.*, 2022 WL 159559, at *1 (N.D. Ill. 2022); *Stagger v. Experian Info. Sols., Inc.*, 2021 WL 5299791, at *2 (N.D. Ill. 2021). Absent a negotiated agreement between counsel, the "loser" on a discovery motion might be "right" – in the judgment of some abstract decision makers – but "wrong" in the eyes of another, and thus will have little or no *effective* recourse given the discretionary nature of discovery motions in general. *See LKQ Corp. v. Gen. Motors Co.*, 2021 WL 4125097, at *1 (N.D. Ill. 2021)("Indeed, a party can only overturn a discovery ruling where there has been a mistake of law or an "abuse of discretion." Rule 72(a), Federal Rules of Civil Procedure. As to the latter, it occurs when no reasonable person could agree with the district court's decision.").

All that being said, plaintiff should make no mistake. It is going to have to perform searches that it would rather not make and to sift through large numbers of emails – a task that has become an accepted common-place in modern litigation. Plaintiff, after all, filed this lawsuit. It thought its necklace fans important enough to go through the significant toil and expense of federal litigation. It will not and cannot be presumed that the plaintiff – or the defendant – is on the right side of the case. That is necessarily a retrospective judgment, not a prospective one that decides discovery questions at the outset of a case by presupposing who is on the right side of the case. Discovery is almost always costly and difficult; it is, by its very nature, burdensome and often intrusive. But that does not make discovery improper. It only becomes so when it is *unduly* burdensome. *See* Rule 26(b)(1). *See, e.g., Uccardi v. Lazer Spot, Inc.*, 390 F. Supp. 3d 911, 916 (N.D. Ill. 2019).

7

It should go without saying that months of arguing over five search terms, and then involving a court in that dispute in any event, would be out of proportion to the needs of many cases. But there can be no dispute that what has gone on thus far in this particular case is out of proportion with the needs of this particular case and the commands of good sense.[4] The attorneys in this case are, essentially, at square one. They have not whittled their dispute down far enough for meaningful court intervention. The court cannot – and ought not – take over the selection of search terms and conjunctive terms that might assist in locating pertinent documents. That is counsels' job, not the court's. Indeed, courts are prohibited in all contexts from doing the work of counsel. Requiring the court to perform what is obviously the work of counsel would be patently unfair. It would require the court to weigh in on one side to the possible disadvantage of the other and would be inconsistent with the adversary system, itself. Indeed, the Supreme Court recently emphasized, "[i]n our adversarial system of adjudication we follow the principle of party presentation." *United States v. Sineneng-Smith*, ––– U.S. –––, 140 S.Ct. 1575, 1579 (2020). That principle assigns to the court the role of "neutral arbiter of matters the parties present." *Id.* Thus, "as a general rule, [o]ur system is designed around the premise that [parties represented by competent counsel] know what is best for them and are responsible for advancing the facts and arguments entitling them to relief.'" *Id.* at 1579. (Brackets in original). *See also Kreg Therapeutics, Inc. v. Vital Go, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019); *Bunn v. FDIC*, 908 F.3d 290 (7th Cir. 2018); *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001).

---

[4] Unfortunately, the problem is not new. *See, e.g.,* John Grady, *Trial Lawyers, Litigators and Clients' Costs*, 4 LITIGATION 5 (Spring 1978); Wayne Brazil, *The Adversary Character of Civil Discovery: A Critique and Proposals for Change,* 31 Vand.L.Rev. 1295-96, 1304, 1310 (1987); William W. Schwarzer, *The Federal Rules, the Adversary Process, and Discovery Reform*, 50 U.Pitt.L.Rev. 703, 704, 705, 715 (1989).

Counsel would do well to keep before them as a living faith Judge Moran's common sensical but profound insight. "The discovery rules are not a ticket [Judge Moran has observed] to an unlimited never-ending exploration of every conceivable matter that captures an attorney's interest. Parties are entitled to a reasonable opportunity to investigate the facts-and no more." *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055, at *2 (N.D. Ill. 1994). Counsel have more work to do; to accomplish what needs to be done, they need to take more reasonable positions and take them quickly and efficiently. If experience is any guide, June 23rd will come much more quickly than counsel might imagine.

The defendant, O2 Cool LLC's Motion to Compel [Dkt. #41] is denied.

**ENTERED:**______________________________
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 3/24/22