# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEAL GENIUS, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>O2COOL, LLC, a Delaware Limited Liability Company,<br><br>Defendant. | SPECIAL MASTER REPORT NO. 1<br><br>REPORT RE STATUS OF DISPUTE REGARDING PRODUCTION OF CERTAIN EMAILS<br><br>No. 21 C 2046<br><br>Magistrate Judge Jeffrey Cole<br>Special Master Philip J. Favro |

Pursuant to the Court's September 23, 2022 Order Appointing Philip Favro As Special Master ("Special Master Appointment Order"),[1] the Special Master hereby provides the following REPORT regarding the status of the dispute between Plaintiff and Counterclaim-Defendant Deal Genius, LLC ("Deal Genius") and Defendant and Counterclaimant O2COOL, LLC ("O2COOL") regarding Deal Genius's production of certain emails ("Email Dispute").

1.  Pursuant to the Special Master Appointment Order and the Court's September 21, 2022 minute order ("9/21/22 Minute Order"), the Special Master has been tasked with resolving the Parties' Email Dispute that "has so bitterly divided counsel" for Deal Genius and O2COOL.[2] To accomplish this directive, the Court has empowered the Special Master to "review such documents as he deems appropriate and conduct such hearings, if any, that he determines are

---

[1] Docket No. 75, filed September 23, 2022.
[2] Docket No. 71, filed September 21, 2022.

appropriate to perform his duties effectively and promptly."[3] The Court also authorized the Special Master to hold "teleconferences or video conferences as the need arises" and to require "the parties . . . to obtain the services of a court reporter for any teleconference or video conferences" to ensure there is a transcribed recording of those conferences.[4]

2. In order to carry out the Court's directive memorialized in Paragraph One of this REPORT, the Special Master directed the Parties to provide him with copies of pertinent briefings they filed, along with the relevant Rule 34 requests for production and written communications between the parties relating to the Email Dispute. In addition, the Special Master requested that the Parties attend video conferences with the Special Master to address various issues relating to the Email Dispute.

3. The Parties promptly complied with the Special Master's requests, straightway providing him with the documents he requested as reflected in Paragraph Two of this REPORT. The Special Master reviewed the Parties' respective documents and thereafter held video conferences with the Parties on October 6, 2022 and October 19, 2022, each of which were transcribed by a court reporter. During the conferences, the Parties' counsel displayed candor in responding to the Special Master's inquiries and professionalism in their interactions with each other.[5]

4. At the conclusion of the second conference, the Special Master directed and the Parties respectively agreed to prepare a stipulation and order that would require, among other

---

[3] Docket No. 75, filed September 23, 2022.

[4] *Id*.

[5] *See* City of Rockford v. Mallinckrodt ARD Inc., 326 F.R.D. 489, 491 (N.D. Ill. 2018) ("The attorneys are commended for this cooperation, and their clients should appreciate their efforts in this regard. The Court certainly does.").

things, Deal Genius to collect all emails from its Microsoft 365 platform during the stipulated relevant time period (July 1, 2018—July 6, 2022) for the five email custodians that O2COOL previously designated and to run O2COOL's Search Query 1 (which includes subcategories a—f, as memorialized in Sartouk Moussavi's July 13, 2022 meet and confer correspondence with Ron Sklar) against the collected emails. The email collection and search process that Deal Genius will undertake and which will be memorialized in the anticipated stipulation and order has the potential—if handled cooperatively, transparently, and in good faith by both Deal Genius and O2COOL—to resolve the Parties' Email Dispute over Search Query 1.

      5.      The Special Master directed Deal Genius to undertake the email collection and search efforts set forth in Paragraph Four of this REPORT to address the possibility that its prior collection, search, and production of relevant emails did not satisfy the duty of reasonable inquiry under Federal Rule of Civil Procedure 26(g)(1).[6] As the Special Master understands it, Deal Genius conducted its searches for relevant email on its Microsoft 365 platform. Microsoft 365 allows users to both generate and maintain data in a cloud-based repository.[7] Microsoft 365 has functionality that allows users to conduct searches for particular information. However, Microsoft 365 has technological limitations that may not allow a responding party to generate reliable search results— as would typically be possible with an electronic discovery platform that has a fully indexed database and an advanced search engine—and thus satisfy the Rule 26(g) reasonable inquiry standard.[8] Some of the limitations with Microsoft 365 at issue in the present dispute include the following:

---

[6] FED. R. CIV. P. 26(g)(1); DR Distributors, LLC v. 21 Century Smoking, Inc., 513 F. Supp. 3d 839, 901, 952 (N.D. Ill. 2021).

[7] *See* Hamilton Grp. Funding, Inc. v. Basel, 311 F. Supp. 3d 1307, 1310 n.3 (S.D. Fla. 2018).

[8] *See generally Microsoft Purview eDiscovery solutions*, MICROSOFT (10/03/2022), https://learn.microsoft.com/en-us/microsoft-365/compliance/ediscovery?view=o365-worldwide.

3

      a.      Microsoft 365 generally does not fully index the data encompassed within an organization's Microsoft 365 environment.

      b.      Microsoft 365 does not accommodate complex Boolean searches, including certain wildcard operators, proximity operators, or connector terms, nor cannot it handle "fuzzy logic" searches.

      c.      Microsoft 365 does not allow users to validate their search and production results.

6.      In addition, to facilitate discussions between the Parties regarding anticipated quality assurance measures that can better ensure that O2COOL's Search Query 1 targets relevant and proportional information among Deal Genius's five email custodians, the Special Master has directed the Parties to read the following materials:

      a.      *City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489 (N.D. Ill. 2018).

      b.      *William A. Gross Construction, Inc. v. American Manufacturers Mutual Insurance Company*, 256 F.R.D. 134 (S.D.N.Y. 2009).

      c.      Philip Favro, *Proportionality Weaponized: How It Happens And What Can Parties And Courts Do About It*, THE CIRCUIT RIDER: THE JOURNAL OF THE SEVENTH CIRCUIT BAR ASSOCIATION (Sept. 24, 2021).

      d.      Philip Favro, *Analytics, Metrics, and Sampling: Tools Needed for Litigating in the Age of eDiscovery*, BLOOMBERG LAW, DIGITAL DISC. & E-EVID., 18 DDEE 170 (Mar. 15, 2018).

7.      Beyond Search Query 1, O2COOL raised concerns with the Special Master regarding other aspects of Deal Genius's document productions during the October 2022 video conferences. In particular, O2COOL asserts that the email productions Deal Genius previously

made in response to O2COOL's Search Queries 2-5 may be incomplete and are encompassed within the Email Dispute. In addition, O2COOL has expressed doubts about the completeness of Deal Genius's production of non-email documents. At this time, the Special Master has not made any determination regarding O2COOL's additional concerns and has informed the Parties that these issues will be addressed once the Parties' Email Dispute over Search Query 1 has been resolved.

SIGNED this 24th day of October, 2022.

BY THE SPECIAL MASTER:

*Philip J. Favro*
Philip J. Favro
Special Master