IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEAL GENIUS, LLC, a Delaware Limited Liability Company, | Civil Action No.: 1:21-cv-2046 |
| Plaintiff and Counterclaim-Defendant, | Judge: Honorable Joan B. Gottschall |
| v. | Magistrate: Honorable Jeffrey Cole |
| O2COOL, LLC, a Delaware Limited Liability Company, | Special Master: Philip Favro |
| Defendant and Counterclaim-Plaintiff. | **Jury Trial Demanded** |

**STIPULATION AND ORDER
REGARDING PRODUCTION OF RESPONSIVE EMAILS**

O2COOL, LLC and Deal Genius, LLC (collectively "the Parties"), by and through their respective counsel, have agreed upon and jointly stipulated to the terms of this Stipulation and Agreed Order Regarding Deal Genius's Production of Emails ("Order") pursuant to the video status conference before the Court and Special Master Philip Favro on January 12, 2023.[1]

**1.    SCOPE**

This Order shall govern Deal Genius's production of emails relating to the following search queries (collectively, "the Terms 2-5 Emails" or "Terms 2-5"):

- **Term 2**: neck! & fan & infring!
- **Term 3**: patent & infring! AND NOT (copyright OR trademark)
- **Term 4**: (1430 OR 1431 OR 1432 OR 1433 OR 1434 OR 1435 OR 1436 OR 1437 OR 1438 OR 1439) & (sue! OR suit OR lawsuit)
- **Term 5**: fan & ("copy" OR copie! OR "copying")

/
/

---

[1] *See* Docket No. 105, filed January 12, 2023.

This Order incorporates by reference the Protective Order governing this case, *i.e.* Appendix B to the Local Patent Rules for the Northern District of Illinois ("Protective Order").

**2. COLLECTION**

The documents against which Deal Genius shall run Terms 2-5 include only those custodial emails (family complete) that Deal Genius collected in November 2022 pursuant to the Stipulation And Order Regarding Production Of Responsive Emails ("11/7/22 Order").[2] The relevant time period for responsive documents is July 1, 2018 through July 6, 2022.

**3. DEDUPLICATION OF PRIOR PRODUCTION**

Deal Genius shall deduplicate the Terms 2-5 Emails against productions Deal Genius previously made in the above-captioned litigation. If Deal Genius previously produced an email or other document in this litigation, Deal Genius shall remove that email (family complete) or document from the Terms 2-5 Emails and shall provide O2COOL with a list of all such duplicate emails or documents identified by Bates number that are hits on Terms 2-5 and which Deal Genius previously produced to O2COOL in this litigation.

**4. HIT REPORT**

(a) Deal Genius shall run a report that identifies the number of hits associated with each of the Terms 2-5 Emails ("the Terms 2-5 Hit Report").

(b) Deal Genius shall provide the Terms 2-5 Hit Report to O2COOL.

**5. ANALYSIS OF THE TERMS 2-5 EMAILS**

(a) After the Terms 2-5 Hit Report has been provided as set forth above, Deal Genius shall review, code, and produce the responsive Terms 2-5 Emails within 30 days of the entry of this Order.

---

[2] *See* Docket No. 91, filed November 7, 2022.

(b) Rather than initially review all of the hit emails, Deal Genius may alternatively review samples of the hit documents to gauge whether the search queries for the Terms 2-5 Emails will in fact yield responsive information.[3] Deal Genius may do so by obtaining a random sample of the hit emails at a 95% confidence level, 5% confidence interval; coding the selected sample emails for relevance and privilege; and sharing with O2COOL the resulting sample review metrics (*i.e.*, the number of documents selected and coded nonresponsive, responsive and non-privileged, and responsive and privileged). Together with the review metrics, Deal Genius shall produce to O2COOL the sampled emails (family complete) that it coded responsive and non-privileged and generally describe the emails it withheld as nonresponsive.[4]

(c) The Parties understand and agree that the email collection and production process is an iterative one. Accordingly, the Parties will work cooperatively and transparently to determine whether any of the individual queries from the Terms 2-5 Emails requires revisions to better ensure that they target relevant and proportional information pursuant to Rule 26(b)(1). The Parties may individually or collectively request the assistance of the Special Master in connection with this process.

(d) Should a dispute between the Parties arise regarding any aspect of the process in Paragraph 5 of this Order, and, after the Parties meet and confer, they are unable to reach an agreement, the Parties shall promptly submit the dispute to the Special Master. After providing the Parties an opportunity to be heard, the Special Master shall issue an order deciding the issue(s) in

---

[3] *See* The Sedona Conference, *Commentary on Proportionality in Electronic Discovery*, 18 SEDONA CONF. J. 141, 167 (2017) ("using sampling to demonstrate the rate of responsive information can support an argument that a data source is or is not likely to contain responsive information.").
[4] *See id*. at 166-67 ("in order to demonstrate the absence of unique responsive information, a party may consider providing a description or examples of the irrelevant documents to the requesting party in order to provide that party with equal knowledge as to what would be yielded from a search of those sources.").

dispute.[5] The Parties shall maintain their rights to take action regarding any order the Special Master may issue.[6]

(e) That Deal Genius may choose to review samples of the hit documents does not relieve Deal Genius of the obligation to complete its production of responsive Terms 2-5 Emails within 30 days of the entry of this Order.

**6. PRODUCTION OF THE TERMS 2-5 EMAILS**

(a) After completing the process set forth in Paragraph 5 of this Order regarding the Terms 2-5 Emails, Deal Genius shall produce the relevant emails (family complete) to O2COOL in the same production format the Parties used in their prior email productions. In addition, pursuant to Paragraph 3 of this Order, Deal Genius shall simultaneously provide O2COOL with a list of all duplicate emails or documents identified by Bates number that are hits on Terms 2-5 and which Deal Genius previously produced to O2COOL in this litigation.

(b) Within seven days following delivery of the Terms 2-5 Emails production, Deal Genius shall serve a corresponding privilege log setting forth any claims of privilege or work product over relevant documents among the hit emails.

**7. VALIDATION: NULL SET DOCUMENT REVIEW AND PRODUCTION**

(a) After Deal Genius completes the production set forth in Paragraphs 5 and 6 of this Order, Deal Genius shall provide a report to O2COOL reflecting the total number of documents from its email custodians that were either coded nonresponsive or that did not hit on the search queries for the Terms 2-5 Emails, and were thus not produced nor designated as privileged (the "Null Set").[7] Deal Genius shall next prepare a random sample of documents from the Null Set,

---

[5] *See* FED. R. CIV. P. 53(d).
[6] FED. R. CIV. P. 53(f).
[7] *See City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489, 491-92 (N.D. Ill. 2018) (describing the meaning of "null set" and the measures the court ordered the parties to incorporate into their ESI search protocol to ensure that a

calculated using a statistical confidence level of 95% with a confidence interval (margin of error) of 2% ("Null Set Sample"). If the Null Set Sample includes documents Deal Genius previously reviewed in connection with its prior Null Set Sample review pursuant to the 11/7/22 Order, Deal Genius shall remove all such documents from the current Null Set Sample and, using its eDiscovery platform's technology, randomly select replacements from the Null Set for the instant Null Set Sample. Deal Genius shall then have 10 days to review the Null Set Sample and code the documents for relevance and privilege.[8]

(b)     When Deal Genius has completed its review of the Null Set Sample, it will subsequently notify O2COOL of the size of the Null Set, the size of the Null Set Sample, and the number of responsive documents (if any) found during the review of the Null Set Sample. If responsive information is identified during the Null Set review, Deal Genius shall produce the newly identified relevant emails (family complete) to O2COOL in the same production format the Parties used for their prior email productions. Within seven days following the production (if any) of documents from the Null Set Sample, Deal Genius shall serve a corresponding privilege log setting forth any claims of privilege or work product over relevant documents identified in the Null Set Sample.

(c)     The Parties will then meet and confer within seven days following the production of any relevant documents found in the Null Set Sample to determine if modifications to the search queries for the Terms 2-5 Emails are needed to ensure that Deal Genius produces other relevant

---

reasonable review of the null set documents transpired and that materially relevant information was not unreasonably nor inadvertently excluded from the parties' respective productions); *Shumway v. Wright*, No. 4:19-cv-00058, 2019 WL 8135308 (D. Utah Nov. 22, 2019), *report and recommendation adopted*, No. 4:19-CV-00058-DN-PK, 2019 WL 8137130 (D. Utah Dec. 16, 2019) (detailing the nature and significance of the "null set").
[8] For reference purposes, depending on the final volume of the Null Set, it is anticipated that the Null Set Sample will contain between 1,000 and 2,400 documents.

documents (assuming there are any additional relevant documents) from the Null Set that are material to the claims and defenses of the above-captioned litigation.

(d) If, after the Parties meet and confer, they are unable to reach an agreement on whether and what additional relevant documents should be produced, the Parties shall promptly submit the dispute to the Special Master for review. After providing the Parties an opportunity to be heard, the Special Master shall issue an order deciding the issue(s) in dispute.[9] The Parties shall maintain their rights to take action regarding any order the Special Master may issue.[10]

**8. ADDITIONAL PROVISIONS**

(a) Either of the Parties may seek from the Special Master—after demonstrating good cause—a reasonable extension of the periods within which to satisfy the obligations in this Order.

(b) This Order may be modified upon agreement of the Parties and approval of the Court.

SO STIPULATED, through Counsel of Record.

Dated: January 26, 2023

Respectfully submitted,

By: /s/
Michael A. Parks, IL 6217230
Sartouk H. Moussavi, IL 6313554
THOMPSON COBURN LLP
55 East Monroe Street, 37th Floor
Chicago, IL 60603
P: (312) 346-7500; F: (312) 580-2201
mparks@thompsoncoburn.com
smoussavi@thompsoncoburn.com

*Attorneys For Defendant and Counterclaim-Plaintiff O2COOL, LLC*

---

[9] *See* FED. R. CIV. P. 53(d).
[10] FED. R. CIV. P. 53(f).

Dated: January 26, 2023By: /s/
Ron N. Sklar (State Bar No. 6304022)
rsklar@honigman.com
William B. Berndt (State Bar No. 6269408)
wberndt@honigman.com
HONIGMAN LLP
155 North Wacker Drive, Suite 3100
Chicago, IL 60606
Telephone: (312) 701-9300
Facsimile: (312) 701-9335

*Attorneys for Plaintiff Deal Genius, LLC*

It is so ORDERED.

Dated: January 26, 2023

_____
Philip J. Favro
Special Master